# Black, Appellant, *v.* Graham, et al.

*Public schools—Dependent children—Incorrigible children—Act of April 23, 1903, P. L. 274—Act of May 18, 1911, P. L. 309—Residence.*

Dependent children who have been committed by the court to the care of certain persons, under the provisions of the Juvenile Court Act of April 23, 1903, P. L. 274, do not thereby become subject to the guardianship of the person into whose care they have been committed, nor do the latter sustain parental relations to them, so that the children obtain a residence in the school district in which such persons reside, within the meaning of the Act of May 18, 1911, P. L. 309, which would entitle them to admission to the public schools of such district.

MR. JUSTICE MOSCHZISKER dissents.

Argued October 23, 1912. Appeal, No. 17, Oct. T., 1912, by plaintiff, from the order of C. P., No. 4, Allegheny Co., Third T., 1911, No. 261, overruling demurrer to return to writ of alternative mandamus, in the case of Walter R. Black, Chief Probation Officer of Allegheny County, v. E. T. Graham, George H. Fuchs, W. W. Hays, William McMurtrie, W. B. Lancaster, and John Mitchell, constituting the Board of School Directors of Glenfield Borough. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Demurrer to return to writ of alternative mandamus. Before SWEARINGEN, J.

Petitioner, who was chief probation officer of Allegheny County, secured a writ of alternative mandamus

to compel the defendants, constituting the board of school directors of Glenfield Borough, to admit to the public schools of the borough certain dependent children who had been committed to the care of persons who were residents in the school district. The return set up that the children were not legal residents of the school district, because their parents and guardians resided elsewhere. Petitioner demurred to the answer and the demurrer was overruled. Petitioner appealed.

*Error assigned* was in overruling the demurrer to the return.

*Edwin Z. Smith,* for appellant.

*Ferd H. Phillips,* for appellees.

OPINION BY MR. JUSTICE BROWN, January 6, 1913:

The appellant, who was the petitioner for the mandamus in the court below, is the chief probation officer of Allegheny County, having general charge of the juvenile probation work of the county and of the children subject to the jurisdiction of the Juvenile Court. The appellees constitute the school board of the district of the Borough of Glenfield, in said county. At various times before the petition for the mandamus was presented a number of children between the ages of six and sixteen years had been committed on probation by the Juvenile Court of the county to certain persons, all of whom are residents of the school district of the said borough. These persons have taken care of said children in their respective homes. Some of these children were committed by the court as dependent, and others as incorrigible, and, under orders of the court, the money for their boarding is paid to their custodians by the County of Allegheny, or by the parents, or by those responsible for their support. The custodians applied to the appellees for admission of the said children to the

common schools of the district. This was refused, on the ground that the children were not legal residents of the school district within the meaning of the statute, but were residents of the school districts of their respective parents or guardians or of the persons sustaining parental relations to them at the time the Juvenile Court took charge of them. As the petition was dismissed under undisputed facts, the question on this appeal is as to the law applicable to them.

The requirement of Section 401, of the Act of Assembly of May 18, 1911, P. L. 309, known as the "School Code," is that the board of school directors in every school district in the Commonwealth shall establish, equip, furnish and maintain a sufficient number of elementary public schools, in compliance with the provisions of the act, for the education of every person residing in such district between the ages of six and twenty-one years who may attend. Section 601 of the same act requires the directors of each school district to provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of six and twenty-one years in the district, who attend school. By Section 1401 the privilege is given to every child being a resident in any school district in the Commonwealth, between the ages of six and twenty-one years, to attend the public schools in the district; and the next section—1402—is as follows: "A child shall be considered a resident of the school district in which his parents or the guardian of his person resides. If any child has no parent or guardian of his person, then such child shall be considered a resident of the district in which the person sustaining parental relations to such child resides." Section 5 of the Juvenile Court Act, approved April 23, 1903, P. L. 274, provides: "In any case where the court shall award a dependent child to the care of any association or individual, in accordance with the provisions of this act, the child shall, unless otherwise ordered, become a ward, and be

subject to the guardianship of the association or individual to whose care it is committed." The question before us on this appeal is to be determined in the light of the foregoing statutory provisions, and is within narrow limits. Counsel for appellant does not insist that incorrigible children, committed by the juvenile court, have a right to be admitted into the public schools of the districts in which their custodians may reside, but rather seems to admit that they do not have such right. It is insisted, however, that dependent children are entitled to admission into such schools, because, under a proper construction of the words of Section 5, of the Juvenile Court Act, the custodians of the dependent children become guardians of their persons or sustain parental relations to them within the meaning of Section 1402 of the School Code.

While the first section of the Juvenile Court Act defines the meaning of the words "dependent child," "neglected child" and "incorrigible children," no distinction is to be recognized between the residence of a dependent and an incorrigible child after they have been committed by the court to the custody or care of some reputable citizen of good moral character. The dependent child, as well as the incorrigible one, is brought before the court under statutory proceedings to enable the court to determine, after a hearing, what order for the commitment and custody and care of the child, its own good and the best interests of the child may require, and, after such hearing, the judge or judges of the court are empowered to commit such child, dependent or incorrigible, to the care of its parents, subject to the supervision of a probation officer, or to some suitable institution, or to the care of some reputable citizen of good moral character, or to the care of some training school, or to an industrial school, or to the care of some association willing to receive it: Section 4, Juvenile Court Act. Each child, after being thus committed, is involuntarily placed in the custody

of the law—the dependent one no less so than the incorrigible. Does the residence of the custodian of such children become their residence within the meaning of Section 1402 of the School Code? This is the sole question for our determination, and, if the residence of the custodian of a dependent or incorrigible child, duly committed by the court, does not become its residence, the mandamus applied for was properly refused.

The children whom the appellant would have admitted to the public schools of the Borough of Glenfield are not residents of that borough because their parents or the guardians of their persons reside there, for it is admitted that the parents live elsewhere; and a guardian of the person of a minor is one appointed by an Orphans' Court or by the will of the child's parent. As this is the ordinary meaning of the words "guardian of the person" of a minor child, the legislature is presumed to have so used them in the Act of 1911. In properly so construing them the court below said what we now approve: "It is true the Juvenile Court Act declares that such a child shall 'become a ward and be subject to the guardianship of the association or individual, to whose care it is committed,' but the act does not use the expression, 'guardian of the person,' the language of the Act of 1911. Guardianship may mean mere protection, and the term used in the Act of 1903 is not equivalent to 'guardian of the person,' as used in the Act of 1911. The latter is a well-known relation, established either by appointment of the Orphans' Court or by the will of a child's parent. That is the sense in which the term 'guardian of the person' is used in the Act of 1911. The relation last above described is the one intended, and this is similar to the parental relation. On the other hand, the relation, established by the order of the Juvenile Court and the contract made thereunder, is really penal in its nature, and it is not permanent. Such of these children as are 'incorrigible' are quasi-criminals. They have been

apprehended for wrongs committed by them. All of
these children are, in effect, prisoners. They have not
been sent to Glenfield as the place of their home, but
only temporarily, pending the finding of homes for them,
or their return to duty. When they went there they
were not residents of the district, entitled to the privi-
leges of the common schools thereof. They are not in
any sense members of any families in the Borough of
Glenfield. We are of opinion that 'the guardianship'
mentioned in the Juvenile Court Act does not mean
'guardian of the person,' as used in the Act of 1911. It
cannot be so understood unless the meaning of the
former term were extended by implication, which is an
unreasonable construction in this instance. The leg-
islature did not declare that children committed by the
Juvenile Court should be residents of the districts,
wherein those to whom they were committed resided.
How easy it would have been to have done so, when pre-
scribing the qualifications of child residents, if it had
so intended. Not having done so, we must conclude that
it intended otherwise. In Section 1412 of this act, the
legislature authorized school districts to admit inmates
of orphans' asylums, children's homes, etc., located
therein, to the schools, but it imposed no obligation to
do so. We cannot think that the rights of children com-
mitted by Juvenile Court, as these have been, are any
higher than those of inmates of institutions such as
those above mentioned."

A second contention of the appellant is that the de-
pendent and incorrigible children had acquired a resi-
dence in Glenfield Borough because their custodians,
resident therein, sustained parental relations to them
within the meaning of the Act of 1911. The relations,
so far as the children are concerned, are involuntary,
and the custodians assumed them as a pure matter of
business. The relationship which they have thus volun-
tarily assumed is to children committed to their cus-
tody by operation of law, which the children could not

avoid. Their homes are but temporary places for the detention of the children, for it never was intended by them or by the court that the children committed to their custody should become members of their families. The relation between each custodian and the children in her care is one of strict business on the part of the custodian and was assumed by her for the express purpose of earning a livelihood. Not a single feature of the relation of parent and child, as universally understood, can be said to exist. We can find nothing, either in the quoted sections of the Act of 1903 or in the remaining portions of it, that would justify any other conclusion. The dependent and incorrigible children committed to the custody of residents of the school district of Glenfield Borough are physically present in that district, but they are not even voluntarily so present. Their physical presence is an enforced one; but whether voluntary or compulsory, it is not a legal residence in the district: Commonwealth v. Upper Swatara Township School District, 164 Pa. 603.

The single assignment of error is overruled and the judgment affirmed.

MR. JUSTICE MOSCHZISKER, dissenting:

I do not concur in the majority opinion. To my mind, those in charge of the children in this case are guardians of their persons within the meaning of the relevant acts of assembly, and, in each instance, for school purposes, the residence of the guardian is that of the child. Nor can I agree that under the Juvenile Court Act "incorrigible" children are considered "quasi-criminals......apprehended for wrongs committed by them"; they are not treated as or to be viewed as if criminals at all, but purely as wards taken in charge "for the purpose of subjecting them to the State's guardianship and protection......as parens patriæ" (Com. v. Fisher, 213 Pa. 48, 53, affirming 27 Pa. Superior Ct. 175) ; and I believe they are entitled to ad-

mission to the schools of the particular district in which the State places them.